UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

JASMINE McDONALD,

    Plaintiff,

vs.

NORTH BROWARD HOSPITAL DISTRICT,
d/b/a BROWARD HEALTH,

    Defendant.
_____/

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff JASMINE McDONALD, through undersigned counsel, sues Defendant NORTH BROWARD HOSPITAL DISTRICT, d/b/a BROWARD HEALTH ("Broward Health"), and alleges as follows:

1. This is an action for unlawful retaliation and interference with Plaintiff's rights under the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 ("FMLA"), and for unlawful employment discrimination and retaliation against Plaintiff on the basis of a known and/or perceived disability in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* ("ADA"), as amended by the Americans with Disabilities Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

2. This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the FMLA and the ADA.

3. Venue is proper in this Court as Plaintiff had been employed by Broward Health in Broward County and all actions complained of herein occurred in Broward County in the Southern District of Florida.

4. Plaintiff at all relevant times was, and still is, a resident of Broward County, Florida, and is *sui juris*.

5. At all relevant times during her employment with Broward Health, Plaintiff was an "eligible employee" within the meaning of the FMLA as she had worked for Broward Health more than 1,250 hours in the 12 months preceding her request for leave under the FMLA. In addition, Broward Health employed in excess of 50 employees within 75 miles of the location where Plaintiff worked during her employment with Broward Health.

5. Defendant Broward Health is, and at all relevant times was, a "special purpose district" of the State of Florida with its principal place of business in Broward County, Florida, and thus at all relevant times was, and still is, a "public entity" as envisioned by 42 U.S.C. §12131(1)(B).

6. At all relevant times during Plaintiff's employment with Broward Health, Broward Health was Plaintiff's "employer" within the meaning of the ADA, the ADAA, and the FMLA, and Broward Health was and still is a "covered entity" within the meaning of these acts.

7. At all relevant times during her employment with Broward Health, Plaintiff was and protected by 42 U.S.C. §12132 of the ADA, which prohibits disability-related discrimination in employment by public entities.

8. At all relevant times, Broward Health operated the Broward Health North hospital in Deerfield Beach, Broward County, Florida, at which it had employed Plaintiff.

9. Plaintiff was employed by Broward Health from June 10, 2019 until September 14, 2020, when she was notified that her employment had been terminated.

10. Plaintiff was employed by Broward Health in the position of Processing Services Technician in the hospital's Sterilization Processing Department ("SPD"). Plaintiff's duties and responsibilities in this position included providing sterilization services for surgical instrumentation, equipment and supplies that were being used by the hospital staff to enable them to provide safe medical services for the hospital's patients.

11. In or about October 2019, an investigation into Broward Health and the hospital where Plaintiff was employed was conducted by the Joint Commission, the non-profit organization that accredits hospitals in the State of Florida, including those run by Broward Health. The Joint Commission's investigation into Broward Health resulted in the issuance of a bad review, including findings as to unsafe and unsanitary conditions in the SPD.

12. In early October 2019, following issuance of the Joint Commission's bad review at a mandatory staff meeting at which the hospital's CEO Alice Taylor as well as Plaintiff's supervisors were present, and acting pursuant to Broward Health's policy to notify it of unsafe and unsanitary conditions, Plaintiff verbally raised concerns of various improper, unsanitary, and unsafe conditions that she had observed in the SPD. These improper, unsanitary, and unsafe conditions in the SPD included inadequately trained SPD technicians, falsifying documentation (indicating that biologicals passed sterilization processes when the biologicals were still being challenged in the autoclave), double-wrapping surgical vendor trays which compromised sterility, visible bio-burden found in sterilized and unsterile surgical trays and equipment after completion of the decontamination process, and other overall dirty conditions properly and fully within the department.

13. On October 18, 2019, following the mandatory staff meeting and primarily because of the Joint Commission's bad review, Sandra Rodriguez, the SPD Supervisor who was supervising Plaintiff, was terminated.

14. The day of Ms. Rodriguez's termination, Plaintiff was called into the office of Christine Kesser, the SPD's then Interim Sterile Processing Manager. Ms. Kesser informed Plaintiff that she was upset and saddened by Ms. Rodriguez's termination and that she and Ms. Rodriguez had been and still were "good friends". Thereafter, on a separate occasion, Ms. Kesser further informed Plaintiff, in an "off the record" conversation, that it had been wrong for Plaintiff to have spoken up about her concerns as to the unsanitary and unsafe conditions in the SPD. Ms. Kesser made it clear to Plaintiff at the time that she was blaming Plaintiff for Ms. Rodriguez's termination, as she asked Plaintiff to apologize to her co-workers in the SPD about the situation. Indeed, Ms. Kesser even specifically asked Plaintiff's co-workers in the SPD if they wanted an apology from Plaintiff for what she had done to Ms. Roriguez.

15. Thereafter, and continuously throughout the remainder of 2019 and into 2020, Plaintiff was subjected to various acts of harassment, intimidation, and hostility by Ms. Kesser, Djeane Spence-Andre, the new SPD Supervisor who had been hired by Ms. Kesser to replace Ms. Rodriguez, and by certain co-workers, in particular a Night Technician in the SPD by the name of Krystal Gayle.

16. Commencing in November 2019 and continuing into August 2020, Plaintiff, both verbally and in writing, repeatedly complained to Broward Health's management, its Human Resources representatives, and even to CEO Taylor about the harassment and hostile work environment she was experiencing. These complaints included, but were not limited to, two verbal complaints made directly to CEO Taylor on or about November 13, 2019 and February 11, 2020

concerning specific harassing incidents that were committed by Ms. Kesser, a written complaint to Broward Health management of workplace harassment dated March 17, 2020 (attached as Exhibit "A") that followed verbal complaints of harassment made to Broward Health's Human Resources department, and a written complaint of harassment to the Broward Health Director of Surgery and the SPD, Curdaline Gray, dated August 14, 2020 (attached as Exhibit "B").

17. None of these internal verbal and written complaints resulted in Broward Health taking any prompt or effective remedial or corrective action and, as a result, Plaintiff continued to be exposed to the continuing workplace harassment, intimidation, ostracization, and hostility from her supervisor, Ms. Spence-Andre, and her co-workers in the SPD, in particular Ms. Gayle.

18. As a result of her being exposed to the continuous and unabated harassment, intimidation, ostracization, and hostility in the SPD, Plaintiff began to suffer from panic attacks, severe anxiety, depression, and the exacerbation of other mental and emotional illnesses for which she had no choice but to seek and receive medical and psychological treatment.

19. From July 22, 2020 until August 19, 2020, Plaintiff was on paid time off leave from work after contracting Covid-19.

20. Significantly, in her email complaint to Ms. Gray dated August 14, 2020 (Exhibit "B"), Plaintiff specifically mentioned that she had just recovered from Covid-19, that she had been suffering anxiety attacks at work from the harassment she had been experiencing (in particular from her coworker Ms. Spence-Andre), that she had spoken to nurses in the Broward Health Employee Assistance Program ("EAP") who had referred her to psychologists for treatment, that she was currently seeking a psychologist for treatment, and that she was seeking "FMLA for her mental health and other health issues." Attached to Plaintiff's email and referenced therein, were details regarding the past incidents of harassment that Plaintiff had experienced in the SPD from February

through July 2020, which specifically involved the harassing and intimidating actions of Ms. Kesser, Ms. Spence-Andre, and Ms. Gayle.

21. Despite Plaintiff specifically alerting Broward Health in her August 14, 2020 email to Ms. Gray of the workplace harassment she was suffering, her rapidly deteriorating mental condition, and her need for psychological treatment and FMLA leave from work, Broward Health failed to take prompt and effective investigative and remedial action to avoid Plaintiff's continued exposure to the harassing and hostile work environment created by her supervisor, Ms. Spence-Andre, and her co-worker, Ms. Gayle.  In addition, Broward Health failed to respond in any way to Plaintiff's explicit exercise of her FMLA rights and request for FMLA leave, including failing to take immediate steps to designate Plaintiff eligible for FMLA leave and failing to provide Plaintiff with the required FMLA paperwork.  Instead, Broward Health totally ignored Plaintiff's explicit request for exercise of her FMLA leave rights as set forth in her August 14, 2020 email (Exhibit "B"), depriving her of her rights and remedies under the FMLA.

22. On August 27, 2020, Plaintiff met with Ms. Gray with the purpose of discussing and providing her with further details of the workplace harassment she had been enduring.  Ms. Gray responded that she had already passed on Plaintiff's email complaint and information to Human Resources.

23. Later at night on August 27, 2020, Plaintiff was specifically taunted and provoked, and subjected to profanity, by Ms. Gayle (one of her accused harassers) to the point where Plaintiff, because of her deteriorating mental condition and out of anger and frustration, made the comment, in front of Ms. Gayle and other employees, including Paul Childress: "This is the type of shit that would make you kill somebody."  Plaintiff also stated to Mr. Childress: "Paul you are defending

6

her, and you don't know what's been going on." Visibly shaken and upset, Plaintiff was then escorted out of the SPD by another co-worker, Candace.

24. The following day, August 28, 2020, Plaintiff was out of work to start an approved paid vacation from August 28, 2020 to September 1, 2020. Plaintiff received a voicemail message that same day from Broward Health's Chief of Human Resources, Yamila Herrera, stating that Plaintiff had been suspended from work until the incident from the previous night had been investigated.

25. On August 31, 2020, Plaintiff was admitted to the hospital at the Fort Lauderdale Behavioral Health Center as a result of suffering a complete mental breakdown. Plaintiff would remain hospitalized through September 9, 2020.

26. On September 2, 2020, Plaintiff's mother called Broward Health to inform the Human Resources department of Plaintiff's hospitalization.

27. On September 9, 2020, Plaintiff was discharged from the mental health hospital and upon returning home received a letter from Broward Health, authored by Broward Health Human Resources Business Partner Alan Berland, and dated September 9, 2020, informing Plaintiff that she had been terminated from employment because of "job abandonment" and "involuntary resignation" for her failure to appear for work on September 4 through 7, 2020. A copy of Mr. Beland's letter to Plaintiff is attached as Exhibit "C". This termination letter to Plaintiff was issued even though Broward Health's Human Resources Chief, Ms. Herrera, had informed Plaintiff that she had been suspended from work pending an investigation and even though Plaintiff's mother had called the Broward Health Human Resources department on September 2, 2020 to inform it that Plaintiff had been hospitalized.

28.  The following day, September 10, 2020, Plaintiff went to Broward Health and met with Ms. Herrera to further explain what had occurred, that she had not abandoned her job but had been hospitalized as had been reported by her mother, and to further discuss what had occurred between Plaintiff and Ms. Gayle in the SPD the night of August 27, 2020.  Plaintiff also took the opportunity at the time to discuss with Ms. Herrera her many prior claims of workplace harassment, intimidation, and hostility.  Ms. Herrera informed Plaintiff that her claims would be investigated and further assured Plaintiff that she would be able to go on FMLA leave for her mental and emotional conditions.

29.  By letter dated September 10, 2020, Broward Health, though its Senior Human Resources Business Partner, Lynn Romano, informed Plaintiff to disregard the September 9, 2020 termination letter sent by Mr. Berland.  The letter also informed Plaintiff that Broward Health would be forwarding an FMLA packet to Plaintiff and requested that she fill it out "for the time you were out".  A copy of Ms. Romano's letter is attached as Exhibit "D".

30.  On September 14, 2020, Plaint fent to Broward Health to secure the FMLA paperwork that had been promised her by the Human Resources department but which she had not received.  However, when she arrived, she was rudely escorted off the premises of the hospital and asked to turn in her security badge.  Plaintiff shortly thereafter received a telephone call from Ms. Herrera informing Plaintiff that she had been terminated from her employment for making a threat of violence in the workplace in connection with the incident with Ms. Gayle on August 27, 2020.  Ms. Herrera informed Plaintiff in this call that Plaintiff was banned form Broward Health and would be receiving her last paycheck.

31.  On September 30, 2020, Plaintiff requested from Broward Health a termination letter, which she received by email from Ms. Herrera on October 6, 2020.  A copy of Ms. Herrera's

October 6, 2020 termination letter is attached as Exhibit "E". Significantly, in her letter, Ms. Herrera informed Plaintiff that Broward Health's Human Resources department was "currently reviewing her concerns" that Plaintiff had provided "on September 10, 2020" and that they would "respond separately with our findings." Ms. Herrera thus falsely and self-servingly referenced Plaintiff's complaints of workplace harassment as being submitted on "September 10, 2020" when in fact Plaintiff had been complaining of workplace harassment, in writing and verbally, throughout 2020, including her written complaints dated March 17, 2020 (Exhibit "A") and August 14, 2020 (Exhibit "B").

32. On October 15, 2020, Plaintiff emailed Ms. Herrera to further inquire about and follow up on her prior concerns and complaints about workplace harassment and received no response. To date, Plaintiff has received no "results" whatsoever of any internal investigation that Broward Health conducted into her internal complaints of workplace harassment, contrary to the representations made to Plaintiff by Ms. Herrera and the Broward Health Human Resources department.

33. Plaintiff received her FMLA packet and forms in the mail from Broward Health, after she had already been terminated, thereby effectively preventing Plaintiff from exercising her FMLA leave rights and remedies as had been explicitly offered her by Ms. Herrera on September 10, 2020.

34. All conditions precedent to brining this action have been satisfied, waived, or otherwise excused.

35, Plaintiff has hired the undersigned counsel to represent her in this case and has agreed to pay counsel a reasonable fee for their services.

## COUNT I – FMLA INTERFERENCE

36. Plaintiff re-alleges paragraphs 1 through 35 as if set forth fully herein.

37. Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

38. In contravention of the FMLA and its regulations, specifically 29 C.F.R. §825.300, Broward Health, upon first learning of Plaintiff's need for FMLA leave for a serious medical condition in her August 14, 2020 email to Ms. Gray (Exhibit "B"), failed to provide Plaintiff with the requested benefits and failed to comply with its statutory obligations This included, but is not limited to, failing to provide Plaintiff with the FMLA paperwork and forms and failing to provide Plaintiff any written notice whatsoever of: (1) her eligibility for FMLA leave; (2) her rights and responsibilities with regard to being on FMLA leave; and (3) designation that her leave would be considered FMLA leave or not FMLA leave.  In fact, Broward Health completely, and without explanation, ignored Plaintiff's initial request to exercise her FMLA rights, as set forth in her August 14, 2020 email to Ms. Gray, which Ms. Gray informed Plaintiff had been passed on to Broward Health's Human Resources department.  Through these actions and inactions and its complete indifference to Plaintiff's FMLA rights and remedies, Broward Health deliberately interfered with Plaintiff's exercise of her leave rights in violation of the FMLA.

39. In addition, Broward Health interfered with Plaintiff's right and remedies in violation of the FMLA and its implementing regulations through the actions and inaction of Ms. Herrera who, acting in the course and scope of her employment for Broward Health, informed Plaintiff both verbally and in writing on September 10, 2020, while Plaintiff was still employed, that Plaintiff would receive an FMLA packet to enable her to take available FMLA leave.  However, Plaintiff did not receive her FMLA packet and forms from Broward Health until well after she had

10

already been terminated, thereby effectively and deliberately preventing Plaintiff from legitimately exercising and securing FMLA leave, in violation of the FMLA.

40.  As a direct and proximate result of Broward Heath's interference with Plaintiff's rights under the FMLA, Plaintiff has suffered damages, including lost pay and lost benefits.

41.  Broward Health interfered with Plaintiff's FMLA rights willfully and deliberately, entitling Plaintiff to recover liquidated damages under the FMLA in an amount equal to her lost back pay and benefits.

42.  Plaintiff is entitled to recover her reasonable attorney's fees pursuant to the FMLA.

WHEREFORE, Plaintiff requests entry of judgment against Broward Health for the following relief:

A) A declaration that Broward Health has violated and interfered with Plaintiff's rights under the FMLA;

B) Reinstatement of Plaintiff into her prior position, or if reinstatement is not feasible, front pay for a reasonable period of time;

C) Lost back pay, lost benefits, and any other lost compensation;

D) Liquidated damages as provided by the FMLA;

E) Reasonable attorney's fees and taxable costs;

F) An award to Plaintiff for any adverse tax consequences she would suffer from any awarded and paid damages hereunder;

G) Pre- and post-judgment interest; and

H) Any and all additional relief as the Court deems just and equitable.

## COUNT II – FMLA RETALIATION

43. Plaintiff re-alleges paragraphs 1 through 35 and 42 as if set forth fully herein.

44. The FMLA and its implementing regulations prohibit an employer covered by the statute from retaliating against an FMLA eligible employee who has exercised or attempted to exercise her rights under the FMLA.

45. Plaintiff both exercised and attempted to exercise her FMLA rights both verbally and in writing, including the August 14, 2020 email to Ms. Gray and in her discussions with Ms. Herrera on September 10, 2020.

46. Broward Health was aware of Plaintiff's intention to exercise her FMLA rights as early as August 10, 2020.

47. Broward Health, with knowledge that Plaintiff had exercised and attempted to exercise her FMLA rights, unlawfully retaliated against Plaintiff in violation of the FMLA's anti-retaliatory provision by failing to provide Plaintiff with the FMLA paperwork and requested leave, and then by suspending and terminating her from her employment.

48. As a direct and proximate result of Broward Heath's unlawful retaliation against Plaintiff in violation of the FMLA, Plaintiff has suffered damages, including lost pay and lost benefits.

49. Broward Health retaliatory actions against Plaintiff were willful and deliberate, entitling Plaintiff to recover liquidated damages under the FMLA in an amount equal to her lost back pay and benefits.

WHEREFORE, Plaintiff requests entry of judgment against Broward Health for the following relief:

A) A declaration that Broward Health has violated and interfered with Plaintiff's rights under the FMLA;

B) Reinstatement of Plaintiff into her prior position, or if reinstatement is not feasible, front pay for a reasonable period of time;

C) Lost back pay, lost benefits, and any other lost compensation;

D) Liquidated damages as provided by the FMLA;

E) Reasonable attorney's fees and taxable costs;

F) An award to Plaintiff for any adverse tax consequences she would suffer from any awarded and paid damages hereunder;

G) Pre- and post-judgment interest; and

H) Any and all additional relief as the Court deems just and equitable.

## COUNT III – ADA/ADAAA DISCRIMINATION

50. Plaintiff re-alleges paragraphs 1 through 35 as if set forth fully herein.

51. At all relevant times, Plaintiff had a qualifying mental disability under the ADA and ADAAA, her anxiety disorder and depression, that limited one or more of her major life activities, including but not limited to thinking, cognitive functioning, focusing, and concentrating.

52. At all relevant times, Plaintiff was an individual with a qualified disability under the ADA and the ADAAA who, with reasonable accommodation of being given medical leave when she requested it in writing on August 14, 2020, to avoid continued workplace harassment, could have continued to perform, and returned to work to perform, the essential functions of her job.

53. Broward Health was aware of Plaintiff's disabling condition and Plaintiff's need to be accommodated with a temporary period of leave.  However, Broward Health ignored Plaintiff's request for temporary leave to enable her to return to full and active duty and failed even to engage

in any interactive process or discussions with Plaintiff about a reasonable accommodation for her disability. Instead, Broward Health chose to continue to expose Plaintiff to a hostile work environment by certain individuals in the SPD, which provoked her into a verbal outburst in the SPD and gave Broward Health grounds to terminate Plaintiff's employment.

54. Broward Health violated the ADA and the ADAAA by effectively denying Plaintiff the reasonable accommodation of temporary leave, or to engage in any efforts to reasonably accommodate Plaintiff to facilitate her to take leave and then return to work from her disabling condition. Broward Health further violated the ADA and ADAAA by discriminatorily terminating Plaintiff because of her disabling condition without engaging in any interactive process to arrive at a reasonable accommodation, and ultimately without affording her a reasonable accommodation to allow her to return to work.

55. As a direct and proximate result of Broward Health's actions in violating the ADA and the ADAAA and discriminating against Plaintiff, Plaintiff has suffered, and continues to suffer, damages, including lost pay and lost benefits, and compensatory damages in the form of emotional distress, humiliation, and loss of dignity.

56. Broward Health's discriminatory actions were done intentionally, willfully, wantonly, and in reckless disregard for Plaintiff's rights under the ADA and ADAAA.

57. Plaintiff is entitled to recover her attorney's fees under the ADA and ADAAA.

WHEREFORE, Plaintiff demands judgment against Broward Health for the following relief:

A) A declaration that Broward Health's conduct is in violation of the ADA and the ADAAA;

B)  An award to Plaintiff of any lost pay, lost income, lost benefits, and lost promotional opportunities;

C)  Reinstatement of Plaintiff into her prior position, or if reinstatement is not feasible, front pay for a reasonable period of time;

D)  An award to Plaintiff of compensatory damages, including damages for emotional distress, humiliation, and loss of dignity;

E)  An award to Plaintiff of pre- and post-judgment interest;

F)  An award to Plaintiff of taxable costs and attorney's fees;

G)  An award to Plaintiff for any adverse tax consequences from any awarded and paid damages hereunder; and

H)  Such further relief as the Court deems just and equitable.

## COUNT IV - ADA/ADAAA RETALIATION

58. Plaintiff re-alleges paragraphs 1 through 35 and 57 as if set forth fully herein.

59. The ADA/ADAAA prohibits an employer from retaliating against an employee who has exercised her rights under the statutes by alerting the employer to a need for reasonable accommodation for a disability, such as the need and request for temporary medical leave.

60. Plaintiff exercised her rights under the ADA/ADAAA by alerting Broward Health, as early as August 14, 2020 in her email to Ms. Gray that she was suffering from mentally disabling conditions that required psychological treatment (as evaluated by Broward Health's EAP) and a medical leave of absence to seek psychological treatment.  In that email, Plaintiff alerted Broward Health that she needed to be accommodated for her psychological condition, which had been caused by unabated workplace harassment, via a leave from work, including FMLA leave, to enable her to obtain psychological treatment.

61. Plaintiff further alerted Broward Health, through its Chief Human Resources Officer, Ms. Herrera, on September 10, 2020 of her mental disability and the fact that she had been hospitalized in a mental care facility for her mental and emotional breakdown and needed to take leave from work for that treatment of and recovery from the disabling conditions.

62. Broward Health unlawfully retaliated against Plaintiff by ignoring Plaintiff's request for medical leave, by failing to provide Plaintiff with any temporary medical leave for her psychological disability, by continuing to expose Plaintiff to a hostile work environment by the same persons of whose behavior Plaintiff had complained, and by ultimately suspending Plaintiff and terminating her employment.

63. As a direct and proximate result of Broward Health's actions in retaliating against Plaintiff in violation the ADA/ADAAA, Plaintiff has suffered, and continues to suffer, damages, including lost pay and lost benefits, and compensatory damages in the form of emotional distress, humiliation, and loss of dignity.

64. Broward Health's retaliatory actions were done intentionally, willfully, wantonly, and in reckless disregard for Plaintiff's rights under the FCRA.

WHEREFORE, Plaintiff demands judgment against Broward Health for the following relief:

A) A declaration that Broward Health's conduct is in violation of the ADA and the ADAAA;

B) An award to Plaintiff of any lost pay, lost income, lost benefits, and lost promotional opportunities;

C) Reinstatement of Plaintiff into her prior position, or if reinstatement is not feasible, front pay for a reasonable period of time;

D) An award to Plaintiff of compensatory damages, including damages for emotional distress, humiliation, and loss of dignity;

E) An award to Plaintiff of pre- and post-judgment interest;

F) An award to Plaintiff of taxable costs and attorney's fees;

G) An award to Plaintiff for any adverse tax consequences from any awarded and paid damages hereunder; and

H) Such further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all issues so triable.

DATED:  February16, 2021.

>RODERICK V. HANNAH, ESQ., P.A.
>Attorneys for Plaintiff
>4800 N. Hiatus Road
>Sunrise, Florida 33351
>Telephone:  (954) 362-3800
>Facsimile:   (954) 362-3779
>Email:  rhannah@rhannahlaw.com
>
>By  /s/ *Roderick V. Hannah*
>       Roderick V. Hannah
>       Fla. Bar No. 435384